Ruffin, Judge.
 

 — The hill is filed to obtain the speci - fic exetmion of a contract between the intestate and the Plaintiff,
 
 William M.
 
 Wall, upon his marriage with Elizabeth, a natural daughter of
 
 Walker,
 
 It is alleged in the bill, that
 
 Walker
 
 agreed, with a view to the marriage, and in consideration of it, to give all his estate, apon Siis death, to
 
 Wall
 
 and his wife.
 

 The bill charges, that
 
 Elizabeth
 
 wa«
 
 Walker’s
 
 daughter, and that he was unmarried, and had no other
 
 issue,;
 
 that he acknowledged her $
 
 took
 
 her from her mother
 
 in
 
 iender infancy, ami received her into his, own house ; where, being a man of good estate, lie bred her up genteelly
 
 ;
 
 that when she grew up, he frequently expressed his wish, that she should marry respectably, and declared, that if she married to please him, he would settle ail his property on her at his death, it further char ges, that the Plaintiff addressed her for a considerable time with the knowl dge and approbation of her father/ and married her with his free consent '
 

 
 *474
 
 A question might arise on the case tltus stated — which is fully supported by the proofs taken ou both sides — . whetlier a tutu» who holds out a natural daughter tc the world, as the future successor to his estate, for the sake of advancing her i'u society, and marrying her respectably
 
 ;
 
 who encourages the addresses of a young man of good properly and standing, without coming to some specific understanding with him, that those expectations naturally arising from his conduct, inust.be still regarded as dependent upon his good will and bounty ; can be allowed afterwards to treat such declarations as mere expressions of affection, and not binding on him. The case of the young people is much stronger in this point of view, than if the daughter were legitimate. Then such general declarations might he referred to the succession by law, which would render unnecessary any act of the parent. But all the parties here knew, that some act was indispensable, and that there was no possibility of the estate going, as contemplated, without a settlement or contract of some sort. It is to be expected that, upon marriage, every person of either sex has a care for some provision for the family. They ought to do so. In ordinary instances, /ibis may be deemed sufficiently secured by the natural affection of the parent, and the descents and distributions oy law in cases of intestacy. But where an illegitimate is concerned, nothing but a contract is any guarantee. This raises a strong presumption, that such declarations were intended to procure an advantageous match y that they did raise* expectations, as designed ; and that thivmarmge took place on the faith of them. Itwouid be a material inquiry, whether the father should he allowed absolutely to disappoint them. Would it not be a fraud on the marrying parties, and through them on the issue? To avoid that, would not the Court, he obliged to hold such dealing a contract ? But the case does not depend upon implying a
 
 contract;
 
 as there is full evidence that one was expressly made a short time before the marriage.
 

 
 *475
 
 ft i;? to bo remarked, that the transaction occurred in 4 816. anti of course before our act, requiring all contracto for the sale of land ami slaves to be Its writing. Happily 3H> such controversies cau now arise, where the fact of the contract and its terms Arill no), snore explioiriy appear, thar. uncertain and contradictory parol íes. íiíssmv;,
 

 sir? ;n few instances could par,»! teotánony be »:o.*e ooinic.tcsíi and satisfactory, than in the present. Almost every one oí ¡he tramemos witnesses in the causo prows, that
 
 Wall
 
 liad visited ike young woman at her father1'*-, and had been engaged to her for a considerable tíme. Tills was not only known to
 
 'Walker,
 
 from his own oh-setvation $ but
 
 Wall
 
 had mentioned it, to him, and. obtained ids consent. The marriage did not Immediate! take place | and unfortunately, the partirá became too ii»-dmate, and the daughter became pregnant.
 

 John fíenles,
 
 who married a wince of
 
 Walker
 
 and liwi 'within half a mile of him, says, that the marriage took, place on Thursday, and i hat on the Sunday before lie *» ;w at
 
 Walker’s,
 
 when the hitler first discovered his «laugh-Ar’.s situation.
 
 Wall
 
 was immediately rent' for, and came.
 
 Walker
 
 seized bis gun, and swore he would kill him ; to which the other replied,
 
 “fire away
 
 — i
 
 am ;a' afraid of your fpm ; bye I am ml tobe forced into ■mea-cures,”
 
 The gun being taken away,
 
 IVuiker’a
 
 passiou subsided. He wept, anil calling for Ins daughter,
 
 »:ii
 
 down ami took Iter on bin knee, and made
 
 WallcM
 
 Iscsklo them. Ho then said, you have ruined my happiness. Did I not tel! yon,
 
 when you spoke to ms for my dough--ter,
 
 lhat Í had willed her ail my estate. Will you destroy my hopes, and not marry her now ?
 
 dud I now promise yon, if you will marry Betsey, l will give yov, all my estate at my death.
 
 You may come and live with rae, am! make all you can j all 1 want: is my support whila 1 live.”
 
 Wall
 
 replied, that he had made no promise to ?>is daughter, Avhick he did not intend to perform : aw!
 
 *476
 
 said lie would marry her, and did so that week. This witness says, that besides himself there were, present
 
 Bichard Webster, Joseph ¿Uley, Phillip -Alley,
 
 and a female named
 
 Crawford;
 
 that
 
 Webster
 
 was the person sent for Wall, and had gone before he,
 
 Scales,
 
 got to Walker’s, and that
 
 Wall
 
 and Webster-came back together.
 

 Many depositions have been taken to prove frequent disagreements between
 
 Walker
 
 and
 
 Wall.
 
 They establish, that
 
 Walker
 
 made two wills, in favor of
 
 Wall mid
 
 his family, and destroyed both, while displeased with
 
 Wall;
 
 that they t'\ice separated, and fhat
 
 Walker
 
 declared he would leave them nothing.
 
 Wall's
 
 wife died shortly before her father; and the old man himself died after a very short illness. There is'also evidence, and a great deal of it, respecting the possession of a tract of
 
 Walker’s
 
 land, on which
 
 Wall
 
 built a mill, and whether that was built out of the funds of the one or the other.. The whole of these proofs are laid out of the case ; because the circumstance itself is only material, as denoting the existence and nature of the original agreement; and is not sufficient, if established, according to the wishes of the Defendants, to repel the mass of direct proof of the agreement. And on the other hand, it is not needed by the Plaintiffs to support their witnesses, who speak to the agreement.
 

 The witness,
 
 John Scales,
 
 further states, that hearing
 
 Walker
 
 was sick, he called to see him ; found him very ill, and uneasy because he had no will. He said, that; he wished
 
 Betsey’s
 
 children to have his estate; that if he had succeeded in his attempt to legitimate her by act of Assembly, that would have secured it; and that lie had intended making another will.
 
 Bu the still hoped, that the contract made with their father before marriage would carry the estate. Walker
 
 died the next day.
 

 The answers do not admit, or positively deny th¿ agreement. But this witness, if credible, preves i;
 
 *477
 
 clearly 5 and also proves, that Its recognition was the last act of the father’s life.
 

 Attempts are ¡nade to discredit Scales. Two persons speak of bis general character being- bad
 
 ;
 
 while many others prove it to be very good, and that if the agreement be not established, bis wife’s mother, being
 
 Walker's
 
 sister, has a large share of tbc.i-sbac. A» efibr¡; is made to coatí edict him.
 
 Webster
 
 says, that he did not sec
 
 Scales
 
 at
 
 ÍValker*s :
 
 that
 
 EUxahdk,
 
 wit hoist her father’s knowledge, desired him to go for
 
 Wall,
 
 whom, he found at his father’s, and to whom be delivered lisa message, stating the disco* ery whirls bad been made. He says, that
 
 Wall
 
 said he did not believe that to be her situation, but weal, and on the way declared that he would perform ail his promises. Upon getting to
 
 Walker’s,
 
 he met
 
 Wall
 
 at the porch with his gun, and threatened to «boot him5 that the gun was taken away froir
 
 Walker,
 
 and hr,
 
 Webster,
 
 went away without going into ¿he house. This was two boors in the night. This plainly does not contradict
 
 Beales,
 
 but supports him, as far as ii goes.
 
 Beales
 
 might have been in the house 5 or he might has e been at the door, and not seen by
 
 Webster
 
 in the dark, or attracted his attention in the affray.
 

 Philip Mleij
 
 says, that he lived at
 
 Walker*#;
 
 that
 
 Beales
 
 vas them in the evening, but had gone away before
 
 Wall
 
 came, he thinks 5 at any rate, that he doeo not remember seeing them there? together. But this witness admits that he himself was there, a ud heard what passed between
 
 Walker
 
 and
 
 Wall,
 
 end in a second deposition, he states the whole substantially as
 
 Scales
 
 does | and in many iin - portant particulars, literally so : as does
 
 Joseph Mlcy,
 
 the other person said by
 
 Scales
 
 to have been there. And it is in proof,
 
 by
 
 a person who staid at
 
 Scales’s
 
 on that Sunday night, that when he came home, he gave his family a relation of ail that passed, corresponding with hi-deposition. And %r, who is one of fio* ^itisesses, who
 
 *478
 
 says
 
 Scales*
 
 character is not good, admits that on Thurs-ni0!‘il*u.£“j;‘ the wedding day,
 
 Scales
 
 told him the marriage was to take place, and upon
 
 Orr’s
 
 expressing a doubt whether
 
 ¡'Fall
 
 would marry the girl, said he certainly would j for that
 
 Walker
 
 had agreed on Sunday night, to give them all his property ; and then proceeded to relate what he heard pass, as it now appears in his deposition.
 

 Divers witnesses speak to
 
 Walker’s
 
 frequent declarations in favor of
 
 Wall,
 
 after the marriage. But it is unnecessary to advert to them particularly, because unless very precise in their terms, and appearing to be deliberate, and made with a view of having evidence to them, the Court would not perhaps decree on mere subsequent declarations. They might rather be considered as testamentary, than as establishing a contract.
 

 But I will not omit the statements of two other witnesses, who testify to conversations in the intermediate period between Sunday and the marriage. The one is
 
 John Whitworth,
 
 who says, that
 
 Walker
 
 was very uneasy at his daughter’s situation
 
 ;
 
 and told him, that the parties had been engaged for a considerable time, and that be had promised
 
 Wall,
 
 if he would marry her, he would leave them ail his estate at his death. The other is
 
 Richard Wall,
 
 the father of the Plaintiff. He says,, that
 
 Walker
 
 came to his house, and applied to him to promote a speedy marriage, and declared that if it toot-place, they should have all he was worth at his death.
 

 Upciu this proof, the Court cannot but establish the general agreement alleged in the bill, that
 
 Walker
 
 should? at his death, devise, or in some other w'ay settle, hie whole property upon the parties to the marriage, or their family.
 

 To the validity of this agreement several legal objections have been made at the bar.
 

 The first is, that it was without consideration, since
 
 Elizabeth
 
 was a bastard, whose relation to
 
 Walker
 
 is not
 
 *479
 
 aiuifieient to raise a use. If this contract rested bet,ween
 
 Elisabeth,
 
 and her father, the objection \v osj 'cl be a good one. But
 
 Wall
 
 Intervenes, ami
 
 his
 
 ¡nurmge is the consideration, and extends beyond himself, and embraces Ms nifo and children. Fardes to marriage agreements may w -2!, and generally do bargain for the wife and issue ; because no man chooses to Ik; burder,od with a family without a provision.
 

 Anoilr-r is, that the agreement is founded in the criminal seduction of the daughter, and was extorted from
 
 Walker)
 
 in a moment of passionate grief at her disgrace, and ought not to be enforced. Whether ibis reason, if founded in fact, would reach the children, and ¡¡at he, restricted to
 
 Wall
 
 himself, and so would not benefit the Defendants, but only coniine the relief to a part, of the Plaintiffs, need not, be considered; because the Court thinks, there is no ground for it its the evidence. If it could be seen, that the estate was
 
 Wall’s
 
 object; that he obtained the confidence, of the father, and the affections of the daughter, for the purpose of betraying both, as a means of securing a settlement; or even after he had de graded her, that he delayed to fulfil Ids engagement, for the sake of getting a specific contract, which lie knew the state to which be had reduced the family, would compel them to yield, the Court could not enforce the contract, in favor of the person who had obtained it by such flagitious and deliberate treachery. The extreme impropriety of his conduct is fully felt. ’But as far as we have evidence, we cannot say that it is not entitled to all the palliation,, which passion and youth — not refined and guided by an elevated sense of honor and a better education — can give. No deeper and more selfish purpose seems to have been cherished by him. He was not himself aware of the full consequences of the immoral intimacy, until
 
 Webster
 
 communicated the youngwoman’s message. Me promptly obeyed it — expressed his disbelief in it — -and voluntarily declared his obligation ant! intention to marry h«r. It
 
 *480
 
 is true, he ills! not appear before her father, professing that penitence which he ought to have felt; nor offering that reparation that was due from him. Perhaps the vio-jence 0f
 
 Walker
 
 put it out of his power to exhibit the emotions lie felt. Srlf respect was an insuperable obstacle to doing even justice, when demanded at the muzzle of a gun, and that in the presence of the woman, whom he had promised and intended to make his wife. Fe must have been dastardly, as well as criminal, if he had said less than “I am not to be forced into measures.” But as soon as
 
 Walker
 
 desisted from violence, and was accessible and appeasable,
 
 Wall
 
 declared himself ready to perform all his promises. , There was no hint or insinuation about the estate on his paid. All that came from
 
 Walker
 
 himself, and not for the first time; for lie said,
 
 tf
 
 I have always told you, that i had willed
 
 Betsey
 
 my
 
 ss
 
 property. Did I not tell you so, when you asked me for her ?” And he has proved a kind and affectionate husband, and a provident head of a family.
 

 The last objection is, that this contract has nothing specific in it, and did not bind the property. That is true,* but it bound Walker, and his heirs and executors. A general covenant to set lie lands does not create a lien on any particular lands ; but it is a debt on the estate.
 
 Walker
 
 could certainly dispose of his property, sell it, and waste the money, Purchasers would bave a good title, unless they became so, for the purpose of enabling
 
 Walker
 
 to evade the contract. But volunteers are bound by it, just as much as if a bond had been given
 
 ;
 
 and there are several cases, in the books, of two persons giving bonds to make the one the other’s heir.
 

 The generality of the agreement however makes it necessary that it should be considered, in what way the estates are to be settled. The contract was to give
 
 Wall
 
 and his wife the estate at
 
 Walker's
 
 death. This, literally taken, would vest tile whole personalty in
 
 Wall.
 
 It appears that
 
 Walker
 
 made two wills, in one ef which he
 
 *481
 
 devised to
 
 Wall
 
 himself; in the other to his wife and children.
 
 Hall
 
 was privy to, and satisfied with each. The spirit of the rirreemeut probably was, as understood by them, that
 
 Walker's
 
 estate should come into the family 5 and he would have considered himself as fulfilling it, by devising to all or any of them. Had he done so, it is not certain that his disposition would have been disturbed. But as be died without expressing his wishes, the Court is obliged to execute the agreement upon general principles- — which lead us mainly to the case of the issue of the marriage, whose inte-rests must be taken as weighing most whh the parly, from whom the estate mines. Ira the present case too the difficulty is the less, because the Plaintiff,
 
 William M-
 
 Wall, submits in the bill to take its connexion with his children. The nurture and education of the children, and the respectability of the family and their advancement in life, when they shall grow up, require that the father should have a life estate in the whole, with the power of giving to each of the- children his or her share, the sons at full age, and the daughters at marriage or full age : remainders to the children aa tenants in common, with cross remainders between themselves, upon their death under age and unmarried: — which will bo ordered, unless the parties lay another settlement before the Court, which will be more to the interest and convenience of the family.
 

 The Master must therefore be directed to inquire, what real and personal estate
 
 Jlbner Walker
 
 left, and take an account of the same in the hands of the administrator and heirs at law, and of the. rents, issues and profits : And the Defendants, the heirs at law, be decreed to'deliver up the possession of the. lands to-the Plaintiff
 
 William M. Watts
 
 end upon the coining in of the report, to execute conveyances for the specific lands therein found, to be approved by. the Cleric of this Court, to a trustee, to be named by the. Plaintiffs, *ijh*u the trusts before mentioned.
 

 
 *482
 
 Per Curiam.
 

 — Declare tiie marriage agreement charg ed in the bill to have been made between the Plaintiff’ and his wife
 
 Elizabeth,
 
 of the first part, and
 
 Abner Walker,
 
 reputed father of said
 
 Elizabeth
 
 of the other part, that said
 
 Walker
 
 would devise
 
 to
 
 or settle on the Plaintiff and his wife, if they intermarried, bis whole, estate real and personal, at his death, to be established : declare further, that said
 
 Walker
 
 having died without making any devise or settlement of his said estates, this Court will order the same agreeably to Equity; and thereupon decree that the Defendants do forthwith surrender into the peaceful possession of the Plaintiff ull the lands which said
 
 Abner
 
 died seised of or entitled to, and which descended to said Defendants as heirs at law, and are now in their possession respectively, to be settled as hereinafter directed; and order further that the Clerk inquire what particular lands descended from said
 
 Abner,
 
 where situate &c. And it is referred to the Clerk to take an account of the rents &c. and also an account of the personal estate of said intestate, in the hands of his administrator, and report the particulars, after allowing just disbursements and charges : and decree further, that upon the coming in of said report, whereby the said estates shall be ascertained, the same shall be conveyed by proper parties to a fit trustee, in trust for the Plaintiff during his life, remainder to his four children, with cross remainders between the said four children, if any of them should die under the age of twenty-one years and unmarried, with power to the Plaintiff to give to each of the said children, his or her share or fourth part, the sons respectively upon their arrival at full age, and the daughters respectively upon their arrival at full age or marriage ; unless in the mean time the parties lay before the Court another settlement fkc.